IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REESE L. HODGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:10-cv-1219 |
| v | ) |
| | ) |
| TRINITY INDUSTRIES, INC., MCCONWAY & TORLEY, LLC *and* MCCONWAY & TORLEY COMPANY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANUM OPINION AND ORDER

Pending before the court is DEFENDANTS' RULE 12(b)(6) MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT (Doc. No. 17), with memorandum of law in support (Doc. No. 18), PLAINTIFF'S REPSONSE TO DEFENDANTS' RULE 12(b)(6) MOTION FOR PARTIAL DISMISSAL (Doc. No. 19), and DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' BRIEF IN SUPPORT OF 12(b)(6) MOTION FOR PARTIAL DISMISSAL (Doc. No. 22). On January 27, 2011, oral argument was presented by the attorneys, who advocated their respective positions thoroughly and skillfully. The motion is now ripe for disposition.

**Factual and Procedural Background**

Plaintiff initiated this action with the filing of his complaint on September 15, 2010. *See* Doc. No. 1. Plaintiff alleges three counts of race discrimination against his former employer, Defendant McConway & Torley, LLC ("McConway").[1] *Id.* The factual and procedural

---

[1] As represented by counsel for the Defendants during the argument on January 27, 2011, McConway & Torley, LLC is a wholly owned subsidiary of Trinity Industries, Inc., and there is no such company as "McConway & Torley Company". For the sake of this Order, "Defendants" will refer collectively to the moving Defendants, in this case, Trinity Industries, Inc. and McConway & Torley, LLC.

background of the case follows. Plaintiff was previously employed as a ladleman with McConway, a Pittsburgh based fabricator of railcar parts, until the termination of his employment on November 28, 2008.

On November 10, 2009, Plaintiff filed a charge of discrimination against McConway with the Equal Employment Opportunity Commission ("EEOC"). More particularly, Plaintiff charged the following particulars:

1. I began working for the respondent June, 2005, and last held the position of Ladleman in the Melt Department. On November 14, 2008, I was suspended pending investigation into an incident which occurred two (2) weeks prior. On or about November 28, 2008, I received a letter signed by Dana Dodds, Human Resources Manager, stating that I was discharged.

2. On November 14, 2008, Dana Dodds, Human Resources Manager, informed me that I was suspended until the investigation into the incident had been completed. Ms. Dodds told me that the reason for my suspension was because I prevented John Bapista, supervisor, from leaving a room by putting my foot against the door. As for my termination, the letter cited disorderly conduct and harassment as the basis for my termination.

3. I believe that the Respondent discriminated against me because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII) in that I was written up for losing heats, which white individuals have done and not been disciplined. Larry (LNU), Bruce (LNU), and Eric Rudd have lost heats and were not disciplined. In June, 2008, Sam (LNU) became angry after being told to walk the heat. Sam (w) threw a garbage can at the supervisor and began cursing the supervisor. No disciplinary action was taken against Sam. In August/September of 2008, Sam physically assaulted me by grabbing my face and pushing me into the wall, leaving scratches on my face. Again, no disciplinary [sic] was taken against Sam. He was not suspended pending any form of investigation. I was told that since there were no witnesses no action would be taken. There were no witnesses when I allegedly prevented John from leaving the room, which I deny.

*See*, Doc. No. 18, at exhibit "A". Further, in the block on the charge of discrimination form, Plaintiff indicated the earliest date in which discrimination occurred as "11-14-2008" and the latest date as "11-21-2008". *Id.*

In his instant complaint, Plaintiff references not only the events described within the EEOC charge of discrimination, but also allegations of other distinct occurrences of

2

discriminatory conduct. In particular and beyond those events occurring in and around November 14 through 21, 2008, Plaintiff alleged the following discriminatory conduct in his civil action complaint:

> 14. During Plaintiff's employment with Defendants, a melt department supervisor consistently referred to Plaintiff and other black employees as "Niggers", and when he was told that the use of such racially derogatory language was offensive, the supervisor then began referring to Plaintiff and other black employees euphemistically as "Canadians", a term which all workers understood had the same racially derogatory meaning.
>
> 15. Plaintiff was asked by Defendants to sign a memorandum prepared by Defendants offering false testimony against a fellow black employee who was alleged to have committed a theft. Plaintiff refused to sign the memorandum, and Defendants were unable to prove the theft charge against Plaintiff's fellow black employee.
>
> 16. Plaintiff complained to Dana Dodds to Defendants' Human Resource Department about Defendants' discriminatory treatment of himself and other black employees, including but not necessarily limited to the incidents described in the preceding paragraphs.

Doc. No. 1 at ¶¶ 14 – 16. It these other occurrences that Defendants seek to have dismissed.

While Plaintiff's complaint is structured with three counts alleging discrimination under different statutory provisions, to wit: Title VII (count I), 42 U.S.C. § 1981 (count II), and the Pennsylvania Human Relations Act ("PHRA") (count III), all three separate counts incorporate all factual allegations of racial discrimination. In other words, count I alleges a violation of Title VII, and within that count, purports to allege that Plaintiff's suspension and the subsequent termination of his employment was discrimination based upon race (¶ 30), that he was intentionally and unlawfully treated differently than white employees in that white employees who engaged in the same alleged behavior were not treated as severely (¶¶ 31, 32), and that the suspension and discharge of plaintiff was in retaliation for his refusal "to corroborate false testimony against another fellow black employee and complaining to Defendants' Human Resource Department regarding Defendants' discriminatory treatment of him and other black

employees" (¶ 35). Likewise, Plaintiff incorporates those factual allegations into the other counts.

Defendants move to dismiss the factual allegations described in paragraphs 14 – 16 and 35 of Plaintiff's complaint on the basis that they constitute separate and distinct allegations of discrimination that were not previously raised in the EEOC charge of discrimination, and therefore have not been administratively exhausted. *See* Doc. No. 18. In response, Plaintiff opposes the motion, averring the following: that the factual bases of those paragraphs "do not materially differ from Plaintiff's EEOC charge", that the facts did not come to light until the investigation by the EEOC, and that Defendants did not cooperate with the EEOC investigation and should not receive the benefit of that lack of cooperation. Doc. No. 19.

**Analysis**

It is well established that to bring a lawsuit under Title VII and the PHRA, a plaintiff must first file a timely administrative charge with the EEOC or a similar state agency. *See* 42 U.S.C. Section 2000e-5(e); *see also*, *e.g.*, *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir.1997). If the plaintiff "fails to exhaust administrative remedies [his] claims can be dismissed." *See Zezulewicz v. Port Auth. of Allegheny County*, 290 F.Supp.2d 583, 591 (W.D.Pa.2003). As the United States Court of Appeals for the Third Circuit has explained, the purpose of the exhaustion requirement "is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *See id.* (*quoting Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir.1996)). It also is intended to put the defendant employer "on notice that a complaint has been lodged against [it] and gives [it] the opportunity to take remedial action." *See Lawton v. Sunoco, Inc.*, 2002 WL 1585582, *4-*5 (E.D.Pa. July 17, 2002) (citations omitted). Accordingly, "[b]ecause the aim of the statutory

4

scheme is to resolve disputes by informal conciliation, prior to litigation, suits in the district court are limited to matters of which the EEOC has had notice and chance, if appropriate, to settle." *Anjelino v. New York Times Co.*, 200 F.3d 73, 93 (3d Cir.1999) (citations omitted).

To determine what claims are properly before this Court, the test developed by the Third Circuit is whether the claims at issue fall "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *See Antol*, 82 F.3d at 1295 (citation omitted).[2] The Third Circuit has cautioned against reading a plaintiff's EEOC charge of discrimination too narrowly, stating that courts must "keep in mind that charges are drafted by one who is not well versed in the art of legal description." *See Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 965 (3d Cir.1978). Thus, "the scope of the original charge should be liberally construed." *See id.* (citation omitted).

Here, the EEOC charge of discrimination identifies the basis of discrimination as "race". *See* EEOC Charge, attached to Defendants' memorandum of law at Doc. No. 18, exhibit A. It further indicates, as the "Date Discrimination Took Place" ("the Date Box") from "11-14-2008" to "11-21-2008." *See id.* The box labeled "continuing action" is not marked. *See id.* The narrative portion of the charge of discrimination describes Plaintiff's suspension and subsequent termination from employment for disorderly conduct/harassment which was the result of an incident involving his supervisor John Bapista after Plaintiff was "written up for losing heats". *Id.* Plaintiff also alleged that white employees were treated differently, both in terms of also losing heats and in terms of demonstrating more severe disorderly conduct in the workplace without any adverse consequences. *Id.*

---

[2]  This standard applies to the PHRA claims as well. *See Ackah v. Hershey Foods Corp.*, 236 F.Supp.2d 440, 444 (applying same test to exhaustion arguments under Title VII and the PHRA, stating "the PHRA should be construed in light of the principles of fair employment law which have emerged relative to the federal statute[s] ...") (citations and internal quotations omitted).

5

Plaintiff's effort to allege additional incidents of discriminatory conduct, including the use of racially derogatory language in the workplace, as alleged in paragraph 14 of his complaint, and the description of the incident involving his refusal to sign some kind of testimonial document containing false information about a fellow co-worker, as alleged in paragraph 15, simply cannot be construed as "fairly within the scope of the prior EEOC complaint." *See Antol*, 82 F.3d at 1295 (citation omitted). The EEOC charge does not suggest or reference any use of racially derogatory remarks or euphemisms by a supervisor, it does not include any reference whatsoever to the charges of theft against a fellow employee, nor does it indicate any expression of complaint of discriminatory treatment by Plaintiff to the human resource department. *See id.* The Court notes that given the context of the EEOC charge, all of these newly-raised incidents would necessarily have occurred prior to the events that were included in the EEOC charge as having occurred between November 14 and 21, 2008.

Plaintiff's averments in paragraphs 14 – 16 and 35 of the complaint do more than suggest additional theories of recovery under the described discriminatory conduct of the charge, they introduce heretofore un-raised factual bases for different theories of recovery. In other words, Plaintiff is now attempting to raise original charges of discrimination in his civil complaint, all of which was apparently known to him prior to the charge of discrimination, and further preceded the conduct described in the EEOC charge. While the scope of the original charge is to be liberally construed, such interpretation does not relieve a complainant from the statutory requirements of administrative exhaustion.

## Conclusion

For the reasons hereinabove stated, Defendants' Rule 12(b)(6) Motion for Partial Dismissal of Plaintiff's Complaint is GRANTED. Any claims alleging unlawful discrimination

as a result of the factual averments set forth in paragraphs 14 through 16 and 35 of Plaintiff's complaint are DISMISSED for Plaintiff's failure to have exhausted administrative remedies.

SO ORDERED, this 7th day of February, 2011.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **Michael L. Brungo, Esquire**
Email: mlb@mbm-law.net
**Roger W. Foley , Jr., Esquire**
Email: rwf@mbm-law.net
**Mary E. Fischman, Esquire**
Email: bf@mbm-law.net

**Albert S. Lee, Esquire**
Email: alee@tuckerlaw.com
**Katherine E. Koop, Esquire**
Email: KKoop@tuckerlaw.com
**Steven B. Silverman, Esquire**
Email: ssilverman@tuckerlaw.com